**UNITED STATES of America, Plaintiff,**

v.

**Judith Lee WHITE, Defendant.**

**No. CR–3–98–114.**

United States District Court, S.D. Ohio, Western Division.

May 20, 1999.

---

Beth Goldstein Lewis, Federal Public Defender, Dayton, OH, for Judith Lee White.

Margaret Mary Quinn, United States Attorney's Office, Dayton, OH, for U.S.

## DECISION AND ENTRY OVERRULING DEFENDANT'S MOTION IN LIMINE (DOC. # 16)

RICE, Chief Judge.

The Defendant, Judith Lee White, is charged in the Indictment with six counts of forging, with the intent to defraud, the endorsement "Hazel B. Hetrick" on a check issued by the United States Treasury, in violation of 18 U.S.C. § 510(a)(1).[1]

---

1. From the papers filed by the parties, the Court surmises that the Defendant is alleged to have forged the name of her mother, Hazel

*See* Doc. # 1. The Defendant is alleged to have committed those offenses between July and December, 1995. This case is now before the Court on the Defendant's Motion in Limine (Doc. # 16).[2] With that motion, the Defendant requests that the Court prevent the Government from introducing, either in its case-in-chief or for purposes of cross examination (if she elects to testify), two categories of evidence, to wit: 1) evidence pertaining to the alleged forgery, in 1989, of three checks issued by the United States Treasury; and 2) her 1995 felony, theft conviction. As a means of analysis, the Court will initially discuss the evidence relating to the incidents of forgery, which allegedly occurred in 1989, following which it will turn to the Defendant's 1995 felony, theft conviction.

### I. 1989 Incidents

█ According to the parties, three United States Treasury checks issued to an individual named Arctic Mendoza ("Mendoza") were forged in 1989. Apparently, Mendoza had given a limited power of attorney to the Defendant's place of employment, the Hetrick Funeral Home, allowing his name to be signed to United States Treasury checks, with the proceeds being used to fund a prepaid funeral expense fund. According to the Government, Mendoza discovered that his account had not been credited, after the checks had been deposited, and sent a letter to White, revoking the power of attorney and demanding that his account be properly credited. The Government states that it does not intend to introduce evidence concerning the 1989 events in its case-in-chief,[3] but that it "reserves the right to use

any and all prior acts to impeach [Defendant] should she choose to testify." Doc. # 19 at 1. Therefore, the Court need only consider whether the Government may utilize the 1989 events to impeach the Defendant.

The Defendant argues that the Court must prevent the Government from utilizing this evidence for purposes ·of impeachment, pursuant to Rule 608(b) of the Federal Rules of Evidence. In addition, the Defendant contends that, even if the evidence relating to the 1989 events is admissible, the Court should exclude it pursuant to Rule 403 of the Federal Rules of Evidence. The Government has declined to address those arguments, other than to reserve its right to utilize all prior bad acts by the Defendant to impeach her if she testifies.

█ The Court commences its analysis by examining Rule 608(b), which provides in pertinent part:

(b) *Specific instances of conduct.* Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness . . . .[4]

As can be seen, the Government would not be permitted to prove, with extrinsic evidence, that the 1989 incidents occurred; however, the Government may be allowed

Hetrick, on six Social Security checks, after Mrs. Hetrick had died.

**2.** Other motions, with which the Defendant seeks discovery and other pre-trial disclosure of information, are also pending. The Court will rule upon those motions by separate entry.

**3.** Consequently, the Court does not address the issue of whether the alleged 1989 inci-

dents of forgery are admissible as "other acts" evidence, in accordance with Rule 404(b) of the Federal Rules of Evidence.

**4.** Since there is no indication that the Defendant was convicted of any offense arising out of the 1989 incidents, the Court assumes that the exception for convictions contained in Rule 608(b) is inapplicable.

to cross-examine the Defendant on those incidents (i.e., inquire into those incidents), if they are probative of her truthfulness or lack thereof.[5] Since a witness may not be cross-examined on immoral or illegal activity, in which she has previously engaged, unless that activity is relevant to her truthfulness, the central question is whether the incidents of forgery, that allegedly occurred in 1989, relate to the Defendant's truthfulness. *See e.g.,* 4 *Weinstein's Federal Evidence* § 608.12(b)(4)(I). A number of courts have indicated that forgery is probative of an individual's truthfulness or untruthfulness and that, therefore, instances of forgery may be explored on cross-examination. *See Ad–Vantage Tel. Dir. Consultants, Inc. v. GTE Directories Corp.,* 37 F.3d 1460 (11th Cir.1994); *United States v. Waldrip,* 981 F.2d 799 (5th Cir.1993); *United States v. Leake,* 642 F.2d 715 (4th Cir.1981). *Accord, Weinstein's, supra,* at § 608.12(b)(4)(ii). For instance, in *Waldrip,* the Fifth Circuit concluded that the District Court had not abused its discretion under Rule 608(b), by permitting the Government to cross-examine the defendant on a letter that she had authored and to which she had forged her accountant's name. Therefore, even in the absence of Sixth Circuit authority, based upon these well-reasoned decisions and the treatise by Judge Weinstein, the Court concludes that the alleged 1989 incidents of forgery are the proper subject of cross-examination under Rule 608(b).

■ The Defendant primarily argues that the Court should prohibit the Government from examining her on those incidents, pursuant to Rule 403, because the probative value of that evidence is substantially outweighed by the risk of unfair prejudice. The Court cannot, at this point, conclude, based upon Rule 403, that it should prevent the Government from cross-examining the Defendant on the inci-

dents which allegedly occurred in 1989. Rather, that determination must await the trial of this litigation, in order to permit the Court to assess the probative value of this evidence after having heard the entirety of Defendant's direct examination, if she should elect to testify. That said, however, the Court does share some of the Defendant's Rule 403–based concerns about the admissibility of evidence concerning the 1989 incidents. For instance, some appellate courts have indicated that a District Court properly exercises its discretion, by preventing cross-examination of a witness on prior misconduct, because the events in question occurred many years earlier. *United States v. Merida,* 765 F.2d 1205, 1216–17 (5th Cir.1985) (District Court did not abuse discretion by preventing the defendant from cross-examining Government witness on arrest that was more than 10 years old and did not result in conviction); *United States v. Kennedy,* 714 F.2d 968, 973 (9th Cir.1983) (District Court did not abuse its discretion by preventing the defendant from cross-examining Government witness concerning his past membership in the Hell's Angels, since that involvement was more than 10 years old). Herein, the Government apparently proposes to elicit testimony from the Defendant about incidents that occurred approximately 10 years ago. In addition, the fact that the Defendant was not even charged with an offense arising out of the 1989 incidents weakens the probative force of those events. In *Ad–Vantage,* the Eleventh Circuit reversed the judgment entered in favor of the defendant after a jury trial, in part because the defendant had improperly used an allegation of forgery against plaintiff's expert witness to cross-examine that witness. 37 F.3d at 1464. In particular, the Eleventh Circuit noted that the incident, in which the witness who was an attorney/CPA was

---

5. Therefore, if permitted to cross-examine the Defendant on those incidents, the Government would be "required to 'take the witness' answer,' " even if that answer were to deny that those incidents occurred, a response

which the Government knew to be untrue. *United States v. DeSantis,* 134 F.3d 760, 766 (6th Cir.1998) (citation omitted). *See also,* 4 *Weinstein's Federal Evidence* § 608.12(3)(a).

alleged to have forged the signature of a client on a check, was of little probative value, since no formal sanction had been imposed upon the witness, even though he had been investigated.[6] *Id.* ("when the allegations of wrongdoing were grave but no sanctions resulted, the danger was great that the jury would infer more from the investigation than was fairly inferable"). Herein, the Defendant was never prosecuted for an offense arising out of the 1989 incidents. Moreover, the Government merely states that it is believed that the Defendant fraudulently endorsed Mendoza's three checks. Therefore, this Court, as was the Eleventh Circuit, is concerned that the jury might infer more than is "fairly inferable" from cross-examination concerning those incidents.

In sum, the Court concludes that the 1989 incidents are a permissible subject for cross-examination under Rule 608(b), and that it is not possible, in advance of hearing the Defendant's direct examination, to determine whether such cross-examination is permissible under Rule 403's balancing test. Accordingly, the Court overrules the Defendant's Motion in Limine (Doc. # 16), as it relates to the use of the 1989 incidents to impeach the Defendant, in the event that she should choose to testify.

## II. 1995 Felony, Theft Convictions

In 1995, the Defendant was indicted by a Montgomery County, Ohio, Grand Jury with twelve felony counts of theft, in violation of Ohio Revised Code § 2913.02(A)(2). The Defendant plead guilty to six of those counts, and received a suspended sentence. Those charges arose out of incidents in which the Defendant allegedly misused money that customers had paid to Hetrick Funeral Home to fund prepaid funeral plans. The Government argues that evidence concerning the Defendant's actions

is admissible during its case-in-chief, pursuant to Rule 404(b) of the Federal Rules of Evidence. In addition, the Government contends that, pursuant to Rule 609 of the Federal Rules of Evidence, it may employ evidence of Defendant's conviction to impeach her, if she should testify. As a means of analysis, the Court will initially address the question of whether this evidence is admissible pursuant to Rule 404(b). In the event that it concludes that this evidence may not be admitted pursuant to that rule, it will address the question of admission for purposes of impeachment under Rule 609. Should the Court conclude, however, that this evidence is properly admissible under Rule 4040(b), it will not be necessary to address the parties' arguments concerning Rule 609, since the evidence will be before the jury in any event.

Rule 404(b) provides:

(b) *Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

In *United States v. Merriweather,* 78 F.3d 1070 (6th Cir.1996), the Sixth Circuit reiterated the three-part test that a District Court must employ to ascertain whether evidence is admissible pursuant to Rule 404(b), to wit: 1) whether the "other acts" actually occurred; 2) whether the evidence of the "other acts" is admissible for a

---

**6.** A grievance committee of the Florida Bar found probable cause to believe that the witness had committed an ethical violation. However, the charges had been dismissed, with the witness being permitted to resign from the bar, with leave to reapply. The Florida Institute of Certified Public Accountants did not find probable cause.

proper purpose under Rule 404(b); and 3) whether, pursuant to Rule 403, the probative value of the "other acts" evidence does not substantially outweigh its unfairly prejudicial effect. *Id.* at 1074. *Accord, United States v. Gold Unlimited, Inc.,* 177 F.3d 472 (6th Cir.1999). The *Merriweather* court explained how that test, particularly the second and third elements, was to be applied:

> Upon objection by the defendant, the proponent of the evidence, usually the government, should be required to identify the specific purpose or purposes for which the government offers the evidence of "other crimes, wrongs, or acts." By so requiring, we do not mandate hypertechnicality. It is true that whether 404(b) evidence is admissible for a particular purpose will sometimes be unclear until late in the trial because whether a fact is "in issue" often depends on the defendant's theory and the proofs as they develop. Nevertheless, the government's purpose in introducing the evidence must be to prove a fact that the defendant has placed, or conceivably will place, in issue, or a fact that the statutory elements obligate the government to prove.
>
> After requiring the proponent to identify the specific purpose for which the evidence is offered, the district court must determine whether the identified purpose, whether to prove *motive* or *intent* or *identity* [or] some other purpose, is "material"; that is, whether it is "in issue" in the case. If the court finds it is, the court must *then* determine, before admitting the other acts evidence, whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice under Rule

403. If the evidence satisfies Rule 403, then, after receiving the evidence, the district court must "clearly, simply, and correctly" instruct the jury as to the *specific* purpose for which they may consider the evidence.

78 F.3d at 1076–77 (emphasis in the original and citation omitted).

Herein, the Defendant does not contest that there is sufficient evidence to establish that the previous theft offenses, to which she entered a guilty plea, actually occurred. Therefore, the Court concludes that the first prong of the *Merriweather* test has been met.[7]

■ With respect to the second prong of the *Merriweather* test, the Government states that evidence of the thefts committed by the Defendant is admissible to prove intent.[8] The Government having identified the purpose for the admission of that evidence, this Court must now determine whether that purpose is material, i.e., whether the Defendant's intent is "in issue." The Defendant is charged with six counts of violating 18 U.S.C. § 510(a)(1), which prohibits forging a signature on a Treasury check, with the intent to defraud. In *Gold Unlimited,* the Sixth Circuit reiterated:

> The rule might be stated as follows: where there is thrust upon the government, either by virtue of the defense raised by the defendant or by virtue of the elements of the crime charged, the affirmative duty to prove that the underlying prohibited act was done with a specific criminal intent, other acts evidence may by introduced under Rule 404(b).

7. The Defendant does, however, contend that the evidence is insufficient to establish that the theft offenses are similar to the ones with which she is charged in this prosecution. The Court discusses that argument in the context of the third element of the *Merriweather* test (i.e., whether the probative value of the other acts evidence is substantially outweighed by the risk of unfair prejudice).

8. The Government also states that the evidence is admissible to prove motive and absence of mistake. Since the Court finds that the evidence is admissible to prove intent, it does not consider these alternative bases.

177 F.3d at 472, 483 (quoting *United States v. Johnson,* 27 F.3d 1186, 1192 (6th Cir.1994), *cert. denied,* 513 U.S. 1115, 115 S.Ct. 910, 130 L.Ed.2d 792 (1995)). In *Gold Unlimited,* the defendant had been charged with mail fraud, which, like § 510(a)(1), imposed upon the Government the obligation to prove that the defendant had acted with the intent to defraud. Given that burden, the Sixth Circuit concluded that the defendant's intent was in issue. Moreover, herein, the Defendant appears to have put her intent in issue. In arguing that the Government should not be permitted to utilize this evidence to cross-examine her, pursuant to Rule 609, the Defendant contends that she is the only person who can testify how she understood the Social Security system to operate and that she contacted the Social Security office, right after her mother died. Doc. # 16 at 15. That statement indicates that the Defendant has raised an intent defense in this prosecution (i.e., rather than denying that she had signed her mother's name on the six checks, she contends she did not do those acts with the intent to defraud). Accordingly, the Court concludes that the Defendant's intent is material or in issue in this litigation.

■ The third prong of the *Merriweather* test is to balance, in accordance with Rule 403, the probative value of the evidence against the risk of unfair prejudice to the Defendant. The Defendant, in essence, argues that the probative value of this evidence is not great, since there is a dissimilarity between the offenses charged in this prosecution and those to which she has previously entered a guilty plea.

While there are differences between the offenses, the Court does not deem them to be of sufficient magnitude to destroy the probative value of this evidence. For instance, both types of offenses require proof of intent. The offenses, to which the Defendant entered a guilty plea, required proof that she acted with the purpose of depriving the owner of its property.[9] *See* Ohio Rev.Code § 2913.02(A)(2). The fact that the Defendant would act with that purpose in roughly the same period of time that she is alleged to have forged her mother's name on Social Security checks is probative of whether she acted with an intent to defraud when she forged those checks in issue in this case.[10] With respect to prejudice, the Sixth Circuit has cautioned that courts should consider whether there are alternative means of proof. *Merriweather,* 78 F.3d at 1077. Herein, the Defendant has not argued that the Government possess an alternative means of proof. In addition, this Court can reduce the prejudicial impact of this evidence, by clearly and concisely instructing the jury, both when the evidence is introduced and in its jury instructions at the conclusion of the trial, as to the limited purpose for which this evidence may be considered. Therefore, the Court concludes that the probative value of this evidence is not substantially outweighed by the danger of unfair prejudice to the Defendant.

■ Accordingly, the Court overrules the Defendant's Motion in Limine (Doc. # 16), to the extent that, with that motion, the Defendant seeks an order from the Court, prohibiting the Government from introducing evidence relating to her

9. The Defendant argues that the offenses to which she has previously plead guilty were merely the continuation of a course of conduct initiated by her father, who had operated the Hetrick Funeral Home before his death. According to the Defendant, her father instructed her on that course of conduct, and she merely continued it after his death. Although the Defendant's version of why she stole the customers' funds may detract from the probative force of that evidence to prove that the Defendant acted with the requisite

intent with respect to the crimes charged herein, the jury should be given the opportunity hear the evidence and give it the weight that it deems it deserves.

10. The parties have not stated when the Defendant committed the theft offenses. However, she was indicted and plead guilty in 1995, the same year that she allegedly committed the offenses that underlie this prosecution.

1995 theft convictions in its case-in-chief.[11] Since that evidence will be admissible in the Government's case-in-chief, the Court finds it unnecessary to address the question of whether the Government may utilize that evidence to impeach the Defendant in the event that she chooses to testify.

11. The Defendant raises two additional arguments, neither of which convinces the Court that it should prohibit the Government from utilizing this evidence in its case-in-chief. *First,* the Defendant argues that the Government has failed to comply with the requirement, contained in Rule 404(b), that she be given pretrial notice of other acts evidence, despite the fact that she had requested same. Although there is nothing in the file to indicate that the Government had complied with that requirement, before the Defendant filed her Motion in Limine, the Court will not, on that basis, prohibit the introduction of the evidence, since there is no indication that it has caused the Defendant to suffer prejudice. The Defendant has been able to file a motion seeking the exclusion of such evidence, and the Government, in its opposing memorandum (Doc. # 19), has clearly indicated an intent to seek the introduction of that evidence under Rule 404(b).

*Second,* the Defendant proposes that the Government be prohibited from introducing the evidence, until the Court has had the opportunity to conduct the analysis required by *Merriweather.* Since the Court has conducted that analysis herein, it rejects that request.