**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0278n.06

**No. 12-3494**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff-Appellee,** | **FILED**<br>*Mar 19, 2013*<br>DEBORAH S. HUNT, Clerk |
| **v.** | **ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE** |
| **MICHELE V. DELAINE** | **NORTHERN DISTRICT OF OHIO** |
| **Defendant-Appellant.** | |
| _____ / | |

**BEFORE:   MERRITT, MARTIN, and CLAY, Circuit Judges.**

**CLAY, Circuit Judge.**  Defendant Michele Delaine was convicted by jury of two counts of embezzlement and conversion of government funds in violation of 18 U.S.C. § 641, on November 30, 2011. The district court sentenced Defendant to eighteen months' imprisonment and three years of supervised release, in addition to $89,313.00 in restitution and a $200.00 special assessment. Defendant now appeals her conviction, claiming that there was insufficient evidence of intent to support her conviction, that her counsel was ineffective, and that the district court improperly admitted evidence impeaching her credibility.  For the following reasons, we **AFFIRM** the judgment of the district court.

## BACKGROUND

### A.    Procedural History

Michele Delaine was indicted on October 13, 2011. The indictment charged her with two counts of theft of government funds in violation of 18 U.S.C. § 641. The first count alleged that she had knowingly converted $31,694.00 in Social Security benefits, and the second count alleged that she had done the same with $57,619.00 in Civil Service Retirement System benefits. (R. 14, Superceding Indictment, Oct. 13, 2011.) She pleaded not guilty on June 9, 2011. After a trial in the United States District Court for the Northern District of Ohio, which began on November 28, 2011, the jury returned a guilty verdict on both counts on November 30, 2011. On April 17, 2012, the district court sentenced Defendant to eighteen months' imprisonment and three years of supervised release, in addition to $89,313.00 in restitution and a $200.00 special assessment, and released Defendant on an appellate bond. Defendant now appeals her conviction.

### B.    Factual Background

Defendant met Albert Smith, a former NASA scientist, through their mutual membership in a congregation of Jehovah's Witnesses. During the last few years of Mr. Smith's life, Defendant assisted him in personal and financial tasks, including taking him to appointments with doctors. In 2002, Mr. Smith added Defendant as a signatory to a joint checking account with the right of survivorship at National City Bank ("Account 9833"). Payments from the Social Security Administration and from the Civil Service Retirement System were deposited directly into this account. Mr. Smith also created a trust for his other assets, and named Bruce Morrison, another member of his church, as trustee. Defendant assisted Mr. Smith in creating the trust by gathering

information, but contends that she was not involved in its organization, management, or distribution. (Def. Br. at 5.) At trial, Defendant did admit that she met with Smith and an attorney about one month before Smith's death, and at that meeting, Smith increased Defendant's distribution from the trust. (Gov't Br. at 4–5.)

During the last two weeks of his life, Defendant lived with Mr. Smith so that she could provide care for him. After his death, in April 2006, Defendant continued to live in Mr. Smith's house, through an agreement with Mr. Morrison, so that the house would be protected from vandalism and kept up before it was sold during the winding-up of Mr. Smith's estate. She lived in the house until April 2007, when it was sold. During this period, she paid the utility and maintenance bills for the house. (Gov't Br. at 5.) Because it was a joint account with the right of survivorship, Account 9833 did not pass through Mr. Smith's estate. Defendant received her initial distribution of $100,000 from the estate in October 2007. In February 2009, she received her final distribution of $17,000. (Gov't Br. at 6.)

In early 2011, Laura DeGiglio, an investigator with the Social Security Administration, received a phone call from Victore Janezic, an agent with NASA's Office of the Inspector General, who had performed an audit of the Smith and Delaine accounts. He discovered that after Mr. Smith died, the Civil Service Retirement System continued to make deposits into Account 9833. The payments continued until June 2007, and totaled $57,619.71. Janezic also noticed that Social Security payments totaling $31,594 continued until December 2009. He further noticed that there had been $99,726,49 in withdrawals from Account 9833 after Mr. Smith's death, of which $82,441.39 had been transferred to other accounts belonging to Defendant. There was also a gap

between transfers from Account 9833 to Defendant's other accounts, which ended in October 2007, which was when Defendant received her $100,000 disbursement from Smith's estate. (Gov't Br. at 7.)

At trial, a bank official testified that Defendant had been a holder of Account 9833, and that after Smith's death, she was the only person authorized to use the account. The official also stated that Defendant had opened other accounts, for which she was the sole holder, and to which transfers were made from Account 9833. Morrison testified as to the arrangements made for the house and the disbursement from Smith's estate. Janezic testified to the payments made into account 9833 after Smith's death, and to the amount of the withdrawals from that account. Finally, DeGiglio testified as to her investigation, including the fact that social security payments continued after the house had been sold. Delaine testified on her own behalf, and claimed that she thought that the pension payments were part of the trust. On cross-examination, Delaine admitted that she had forged Smith's signature on checks deposited into the account. At the conclusion of the defense case, Defendant renewed her Rule 29 motion, which was denied again. The jury convicted Defendant on both accounts, and this appeal followed.

## ANALYSIS

### A. The Sufficiency of the Evidence at Trial

Defendant was convicted of two counts under 18 U.S.C. § 641, which criminally penalizes:

Who[m]ever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or . . . receives, conceals, or retains the same with

4

intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted . . . .

Defendant does not contest that the funds taken belonged to the United States, nor does she argue that they were not converted and used. *See also United States v. McRee*, 7 F.3d 976, 980 (11th Cir. 1993) (discussing the three elements of conversion under 18 U.S.C. § 641). Instead, she argues that the government failed to prove that she knowingly and willfully converted the funds.[1] Because Defendant moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 on the basis of insufficient evidence both at the completion of the Government's case and at the conclusion of the trial, the issue is preserved for appellate review. *See United States v. Chance*, 306 F.3d 356, 368–69 (6th Cir. 2001).

The legal sufficiency of the evidence against a criminal defendant is reviewed *de novo*, *United States v. Carson*, 560 F.3d 566, 579 (6th Cir. 2009), but "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *accord United States v. Allen*, 619 F.3d 518, 522 (6th Cir. 2010). The reviewing court must draw "all available inferences and resolve all issues of credibility in favor of the [jury's] verdict." *United States v. Wade*, 318 F.3d 698, 701 (6th Cir. 2003). "Accordingly, defendants bear a heavy burden when asserting insufficiency of the evidence arguments." *United States v. Wettstain*, 618 F.3d 577, 583 (6th Cir. 2010) (citing *United*

---

[1] While the statute itself does not use any traditional *mens rea* language, it is well-established that the statute should be read as including an intent requirement. *See Morissette v. United States*, 342 U.S. 246, 250 (1952).

*States v. Spearman*, 186 F.3d 743, 746 (6th Cir. 1999)).  Further, "[c]ircumstantial evidence alone, if substantial and competent, may sustain a conviction under this deferential standard of review." *United States v. Beverly*, 369 F.3d 516, 531 (6th Cir. 2004).

To prove intent under this statute, the government must show that a defendant knew that the funds belonged to the government, and intended to convert their funds to their own gain.  The question of intent is a determination left to the finder of fact, in this case, the jury.  *See Morissette v. United States*, 342 U.S. 246, 247 (1952).  But because intent may be hard to prove with direct evidence, *United States v. Luxenberg*, 374 F.2d 241, 249 (6th Cir. 1967), a fact-finder may use objective evidence, taken in context, as proof of intent. *United States v. Al-Zubaidy*, 283 F.3d 804, 809 (6th Cir. 2002) ("The general rule in criminal cases is that 'intent may be inferred from the totality of circumstances surrounding the commission of the prohibited act.'" (quoting *United States v. Stagman,* 446 F.2d 489, 493 (6th Cir. 1971)). Furthermore, the question before this Court is not whether we would have found that the government had proven its case beyond a reasonable doubt, but whether there was "sufficient evidence at trial to persuade a rational trier of fact that [Defendant] possessed the requisite intent." *United States v. Washington*, 702 F.3d 886, 892 (6th Cir. 2012).

There was sufficient evidence for a rational jury to find that Delaine had the requisite intent to convert government funds to her own use.  Defendant had been a joint account holder with Smith for some time preceding his death, and knew the source of the deposits.  *Cf. United States v. Bess*, 593 F.2d 749, 752–53 (6th Cir. 1979) (sufficient evidence of intent to convert can exist when defendant becomes aware of the source sometime after the first act of conversion).  The source of the deposits were also on the bank statements.  Defendant also knew the amount to be disbursed to

her from Smith's estate, because she met with Smith's attorney when Smith changed the terms of his estate. In addition, Defendant testified on her own behalf, and accordingly, a jury could reasonably have found that Defendant's explanation, that she thought the Social Security payments and Civil Service pension payments would be reimbursed by the estate, was not credible, as she received a disbursement from the estate in October 2007. *See, e.g., United States v. McGahee*, 257 F.3d 520, 530 (6th Cir. 2001). Finally, Defendant admitted that she knew the source of the payments.

Therefore, we find that there was sufficient evidence for the jury to find that Defendant had the requisite intent to violate 18 U.S.C. § 641.

## B. Impeachment Evidence

Defendant argues that the government was permitted to impeach her testimony using extrinsic evidence, when it introduced an exhibit consisting of checks made out to Albert Smith, on which Defendant had forged his endorsement in order to deposit them. Her claim is that this violated Federal Rule of Evidence 608(b), which states that:

> Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of:
>
> > (1) the witness; or
> > (2) another witness whose character the witness being cross-examined has testified about.
>
> By testifying on another matter, a witness does not waive any privilege against self-incrimination for testimony that relates only to the witness's character for truthfulness.

Fed. R. Evid. 608(b). The government contends that the disputed evidence was not admitted. Rather, they contend, it was used as part of cross-examination, but was not published to the jury, nor did it become part of the record.

While ordinarily, evidentiary rulings are subject to review for abuse of discretion, *United States v. Bell*, 516 F.3d 432, 440 (6th Cir. 2008). Defendant did not object to the use of extrinsic evidence in violation of Federal Rule of Evidence 608(b) at trial, therefore this Court reviews the issue only for plain error. *United States v. Olano*, 507 U.S. 725 (1993). Review for plain error under Federal Rule of Criminal Procedure 52(b) is a four-step inquiry. There must be error, which is clear and obvious, it must "have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the district court proceedings," and it must have "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Puckett v. United States*, 556 U.S. 129, 135 (2009) (internal citations and quotation marks omitted).

In this case, there was no error. The truthfulness of a witness is unquestionably proper grounds for cross-examination. While this Court has never explicitly ruled on the question, the other circuit courts that have done so have all ruled that forgery is probative of a witness's truthfulness. *See, e.g., United States v. Akpan*, 407 F.3d 360, 373 (5th Cir. 2005); *see also United States v. White*, 110 F. Supp. 2d 641, 644 (S.D. Ohio 1999) (collecting cases); 4 *Weinstein's Federal Evidence* § 608.12(b)(4)(I). And Defendant concedes that forgery would be probative of untruthfulness. Rule 608(b), therefore, is best understood not as a blanket bar to the use of evidence regarding the forgeries, but to the admission of extrinsic evidence to prove that the past occurrences took place. *See, e.g., White*, 110 F. Supp. 2d at 643–44 & 644 n.5 (permitting evidence regarding a past forgery

during cross-examination, but cautioning that the government would be required to accept the answers given even if it knew that the answers were false).

The checks that Defendant now claims should have been excluded were never admitted into evidence. The jury did not see them, nor were they available to the jury during deliberations. *See United States v. Ahmas*, 943 F.2d 53, at *5 (6th Cir. 1991) (table) (per curiam). Defendant further concedes that the government was permitted to cross-examine her about the checks, and would have been permitted to show them to her during testimony in order to refresh her recollection. (Def. Br. at 23.) Accordingly, we find that the district court did not err in permitting the government to use the checks for impeachment purposes during its cross-examination of Defendant.

## C.     Ineffective Assistance of Counsel

Defendant also raises a claim of ineffective assistance of counsel, arguing that her attorney's failure to comply with the government's discovery requests resulted in the exclusion on material evidence that would have contradicted testimony against her. Ineffective assistance of counsel claims present mixed questions of law and fact and are reviewed *de novo*. *United States v. Ferguson*, 669 F.3d 756, 761–62 (6th Cir. 2012) (citing *United States v. Carter*, 355 F.3d 920, 924 (6th Cir.2004)).

Claims of ineffective assistance of counsel are generally disfavored on direct appeal from a federal criminal conviction. *Ferguson*, 669 F.3d at 762. As a general rule, this Court will defer claims of ineffective assistance of counsel until after the conclusion of direct appeal, when a defendant in custody may bring a motion under 28 U.S.C. § 2255. *Id*. (citing *Massaro v. United States*, 538 U.S. 500, 504 (2003)). Deferring the claim permits the district court to develop a record specific to the adequacy of representation. *Ferguson*, 669 F.3d at 762. Accordingly, the panel may

choose to hear a claim of ineffective assistance only if it "find[s] that the parties have adequately developed the record." *Id.*; *see also, e.g., United States v. Sypher*, 684 F.3d 622, 626 (6th Cir. 2012).

While this Court may choose to entertain a claim of ineffective assistance on direct appeal, *see, e.g., United States v. Pierce*, 62 F.3d 818, 833 (6th Cir. 1995), it will generally choose not to do "except in rare cases where the error is apparent from the existing record." *United States v. Lopez-Medina*, 461 F.3d 724, 737 (6th Cir. 2006); *accord United States v. Wells*, 623 F.3d 332, 348 (6th Cir. 2010). Therefore we will not decide a claim of ineffective assistance unless the claim would be entirely substantiated based solely on the existing trial transcript and other record materials. *See, e.g., United States v. Lostia*, 20 F. App'x 501, 503 (6th Cir. 2001) (claim of ineffective assistance of counsel heard on direct appeal where the claim was based entirely on defense counsel's closing statement).

In this case, Defendant's claim of ineffective assistance is founded on her trial attorney's discovery violations, which led to the district court excluding evidence that Defendant claims would have contradicted Agent DeGiglio's testimony. (Def. Br. at 17–18.) Specifically, Defendant tried to introduce documents that would show that she had power of attorney over a variety of Mr. Smith's health and asset management. (*Id.* at 430.) The trial transcript includes the discussion between the court and the attorneys regarding the admission of these documents. (R. 41 at 430–33.). During this exchange, the court stated that it was "so weary of gamesmanship" that it would not permit the Defendant to admit the documents. (*Id.* at 433.) The court also noted that Defense counsel had failed to cross-examine a government witness with respect to these documents. (*Id.* at 432.) There is no significant discussion of other, prior discovery violations, and no authentication or detailed

description of the documents that Defendant wished to introduce. The records also do not appear anywhere else in the record. Therefore, even were we to assume that her attorney's conduct fell below the objective standard of reasonableness required by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), there would still be no way to determine whether or not Defendant suffered prejudice as a result of that deficient performance based on that conduct. Without reviewing the documents, to see what propositions they support with respect to Defendant's authority over Mr. Smith's assets or relationship with him, or to even authenticate the documents, it is impossible for this Court to determine whether or not there was prejudice to Defendant. The record is therefore insufficiently developed to justify ruling on this issue, which can be more properly developed and analyzed pursuant to 28 U.S.C. § 2255.

Accordingly, we decline to rule on Defendant's appeal with respect to her claim of ineffective assistance of counsel.

**CONCLUSION**

For the foregoing reasons we **AFFIRM** the verdict of the district court.