NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0208n.06

No. 14–3142

| | |
|---|---|
| MICHELE DELAINE, | ) |
| | ) |
| Petitioner-Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent-Appellee. | ) |
| | ) |

**FILED**
Mar 16, 2015
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

---

**BEFORE: BATCHELDER and WHITE, Circuit Judges; and COX, District Judge.***

**HELENE N. WHITE, Circuit Judge.** Petitioner-Appellant Michele Delaine was convicted of two counts of converting government funds in violation of 18 U.S.C. § 641 and sentenced to eighteen months' imprisonment. She appealed, and we affirmed her conviction and sentence. *United States v. Delaine*, 517 F. App'x 466 (6th Cir. 2013) (*Delaine I*). Delaine now seeks habeas corpus relief under 28 U.S.C. § 2255, arguing that her trial counsel was constitutionally deficient when he failed to move for a mistrial after the prosecutor was permitted to privately confer with one of its witnesses during the course of the witness's direct examination. After a hearing, the district court denied Delaine's petition. *Delaine v. United States*, No. 1:13-CV-1831, 2013 WL 6385788, at *3 (N.D. Ohio Dec. 6, 2013) (*Delaine II*). We AFFIRM.

**I.**

In 1976, Delaine met Albert Smith, a former NASA scientist, through their membership in a congregation of Jehovah's Witnesses. Over time, Delaine developed a close relationship

---

* The Honorable Sean F. Cox, United States District Judge for the Eastern District of Michigan, sitting by designation.

with Smith and felt like a surrogate daughter. After Smith retired from NASA in 1995, his main sources of income were his Social Security benefits and his federal pension, both of which were deposited directly into his National City Bank Account ("Account") each month.

As Smith aged and started needing assistance to complete ordinary tasks, Delaine assumed a caretaker role. In 2002, Smith added Delaine as a signatory to the Account so that she could help him pay his bills and deposit any checks he received. The Account was made a joint account with the right of survivorship; thus, upon the death of either account holder, the Account would become the sole property of the remaining account holder. Smith also created a trust to manage his assets (a home, two vehicles, various annuities, and some personal property), and named Bruce Morrison, another church member, trustee.

During the last two weeks of Smith's life, Delaine moved into his home so that she could provide around-the-clock care for him. Upon his death in April 2006, at Morrison's request, Delaine remained in Smith's house to protect it from vandalism and otherwise perform routine maintenance until it was sold. She was not required to pay rent, but was responsible for the utility bills and routine maintenance. Delaine paid these expenses with funds from the Account. In April 2007, roughly a year after Smith's death, the trust sold the house.

Apparently the federal agencies paying Smith's benefits were not informed of his death, and did not discontinue paying benefits. His federal pension was deposited directly into the Account for fifteen months following his death, resulting in an excess payment of $57,619.71. *Delaine I*, 517 F. App'x at 467. Similarly, his Social Security benefits were paid for an additional forty months, resulting in an excess payment of $31,594. *Id.* Delaine—as sole owner of the Account—received $89,313.00 of federal funds after Smith died. *Id.* at 466. Ultimately, $99,726.49 was withdrawn from the Account after Smith's death, of which $82,441.39 went

directly to Delaine.  *Id*.  Delaine conceded that any withdrawals from the Account after April 2007 were for her personal expenses.

The jury convicted Delaine of two counts of theft of government funds; the district court sentenced her to eighteen months' imprisonment and three years of supervised release, and ordered her to pay restitution in the amount of $89,313.00.

## II.

Delaine argues that her trial counsel was ineffective in not moving for a mistrial after an irregularity occurred during the prosecutor's direct examination of Morrison.  Morrison, a retired electrician, was a long-time friend of Smith's and had known the Smith family since 1961.  The prosecution called Morrison as a witness to testify regarding Smith's trust, and when the prosecutor asked Morrison what role he had in regard to the trust, Morrison responded that he was the "executor."  The trial court explained to Morrison that "an executor relates to an estate" and asked "what role [he had] with the trust, if any?"  Morrison responded that he did not understand the question, so the trial court went into more detail:  "Well, when you say you were the executor, that refers to an estate.  A trust is something separate from an estate.  And my question is, with respect to this trust, did you have any role with the trust, if you recall?"  Morrison eventually responded that he did have a role with the trust, but showed confusion and could not testify as to what the trust held or what the trust did.

At this point, the trial court excused the jury and Morrison from the courtroom and called for a brief recess explaining that it did not want Morrison's testimony to "drag out for three days while we try to get Mr. Morrison to understand what happened."  After the prosecutor told the court what he was trying to establish with Morrison, the court stated:  "As I understand[,] what I just heard is that when everything is over, [Delaine] received a considerable portion of the assets

of the trust. Is that accurate?" Defense counsel responded "I believe that it is, Your Honor," but counsel was unwilling to stipulate to this fact because the trust document itself was not available for review.[1] The trial court then stated:

> Well, it sounds to me like the ultimate conclusion is that [Delaine] received most of the assets of the trust when the smoke cleared, which is separate and apart from the claims here, which is that [Delaine] was able to get some control over the Social Security and retirement benefits and treated it as her own. That's the government's case.
>
> And that's separate and apart from the trust issues, as I understand it. Am I wrong?

Still outside the presence of the jury, and believing that Morrison's confusion was of minor significance to the ultimate issues, the trial court suggested: "Why don't we take a brief recess and see if [the prosecutor] can get [Morrison] to figure out what happened and testify to it quickly."

After the recess and before Morrison resumed testifying, defense counsel "object[ed] to the government having the opportunity to discuss the matter with [Morrison]."[2] However, when the trial court asked defense counsel if he "want[ed] a mistrial," defense counsel responded, "No." The trial court then overruled defense counsel's objection, explaining that defense counsel "was unwilling to stipulate, and we were going to be here all day if [the trial court] didn't give the prosecutor the opportunity to speak with the witness. And it turns out [that the issue causing Morrison's confusion was] of little relevance in any event."[3] All this was done, according to the trial court, "in the interest of time."

---

[1] The trust document appears to have been lost before trial and neither the prosecution nor the defense had a copy of it.

[2] It is unclear from the transcript whether Delaine's counsel objected before the prosecutor met with Morrison and put the objection on the record after the recess, or if the objection came only after the recess in the first instance.

[3] Delaine's counsel did not challenge this ruling on direct appeal. *See Delaine I*, 517 F. App'x at 466–67.

Apparently the conversation refreshed Morrison's memory regarding his status and responsibilities as trustee of Smith's trust, because when the jury returned, Morrison was able to answer some questions related to the disposition of Smith's home and his role as trustee.

### III.

We review a denial of a § 2255 motion *de novo* while upholding the factual findings of the district court unless they are clearly erroneous. *Campbell v. United States*, 686 F.3d 353, 357 (6th Cir. 2012) (citing *United States v. Doyle*, 631 F.3d 815, 817 (6th Cir. 2011)). "Ineffective assistance of counsel claims are mixed questions of law and fact," which we also review *de novo*. *Doyle*, 631 F.3d at 817. Notably, in this case, the same district court judge presided over all the proceedings—the trial as well as Delaine's § 2255 motion—and thus the district court had a uniquely "advantageous perspective for determining the effectiveness of counsel's conduct and whether any deficiencies were prejudicial." *See Massaro v. United States*, 538 U.S. 500, 506 (2003); *Rayborn v. United States*, 489 F. App'x 871, 877 (6th Cir. 2012) (quoting *Massaro*, 538 U.S. at 506).

To prevail on her ineffective-assistance-of-counsel claim, Delaine must show that her trial "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [her] by the Sixth Amendment," and that "counsel's errors were so serious as to deprive [her] of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. at 686. To establish the requisite prejudice, Delaine must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Thus, Delaine must show both

that counsel was constitutionally deficient in failing to request a mistrial and that there is a reasonable probability that had he asked for a mistrial, it would have been granted.

## A.

Delaine cannot overcome the "strong presumption" that her trial counsel's decision not to seek a mistrial "might be considered sound trial strategy." *Id.* at 689. There is no indication that the jury had been exposed to prejudicial material or that Delaine's constitutional right to a fair trial was in jeopardy. Delaine's counsel may reasonably have chosen to continue the trial with the already empanelled jury rather than seek a mistrial and risk empanelling a less-favorable jury. Further, the district court did not act improperly in ordering the brief recess. *See* Fed. R. Evid. 611(a)(2) ("The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to . . . avoid wasting time."). Finally, there is nothing inherently prejudicial about allowing counsel to confer with a witness while the witness's testimony is ongoing, assuming, of course, the witness testifies fully and truthfully; this happens as a matter of course when a witness's direct examination spans multiple days. There is no indication that Morrison's hesitation was due to a desire to tailor his testimony rather than to true confusion regarding what he was being asked.[4]

Additionally, Delaine's counsel was aware that she intended to testify. When the prosecutor cross-examined her, Delaine admitted to each allegation in the indictment other than the *mens rea* and agreed that "the only major point of contention in this case is whether or not [she] knew at that time that the funds that were being deposited were actually Social Security funds and pension funds." Earlier in the trial, a National City Bank representative, a Special Agent with the Social Security Administration's Office of Inspector General, and a Special

---

[4] On cross-examination, Morrison apologized to Delaine's counsel "for not understanding what the trustee and the terminologies were."

Agent with NASA's Office of Inspector General used bank statements that were sent to Delaine to show the jury each deposit of federal funds into the Account and each subsequent withdrawal of those funds by Delaine. These witnesses used exhibits that were unrelated to Morrison's testimony to demonstrate, on a transaction-by-transaction basis, that funds were received from the federal government and spent or withdrawn by Delaine. Thus, Delaine's counsel could have reasonably decided that, because the jury would have before it exhibits and testimony provided by witnesses other than Morrison when determining whether Delaine had the requisite mental state to be convicted, Morrison's testimony was unimportant and a mistrial was unnecessary. Delaine has not overcome the "strong presumption" that her trial counsel's decision was strategic.

**B.**

Assuming *arguendo* that Delaine's counsel was deficient, she cannot show prejudice. The decision whether to grant a mistrial is left to the trial court's discretion. *See, e.g.*, *United States v. Moore*, 917 F.2d 215, 220 (6th Cir. 1990) (citing *United States v. Atisha*, 804 F.2d 920, 926 (6th Cir. 1986)). Such a motion should only be granted "where there is a legitimate claim of seriously prejudicial error." *Id.* Here, Delaine has failed to show that a mistrial would have been granted.

As the trial court recognized, the issue with which Morrison showed confusion was largely tangential to the charged offenses. Indeed, even after meeting with the prosecutor, Morrison's testimony addressed the trust and the house, not federal funds, and Morrison expressly stated on two separate occasions that he knew nothing about the Social Security or pension funds. The closest Morrison came to testifying to a relevant issue was when he discussed retrieving financial information from Delaine, including cancelled checks from the

Account, and taking the information to the attorney administering Smith's estate. However, this testimony was verified by exhibits introduced by the Government (the cancelled checks themselves) and again by Delaine herself when she testified. When Delaine's counsel cross-examined Morrison, Morrison stated that he had no information about Smith's finances and confined his answers to questions about the house and the trust. Because Morrison's testimony was so tangential to the ultimate issues, it is unlikely the district court would have deemed a mistrial warranted. *See Moore*, 917 F.2d at 220 (stating the motion succeeds only in response to "seriously prejudicial error"). Prejudice is not shown when, after looking at the transcripts, it is "difficult to imagine the trial court responding favorably to [a mistrial motion]." *See Smith v. Withrow*, 182 F.3d 918, 1999 WL 503473, at *6 (6th Cir. 1999) (denying petitioner's *Strickland* claim in analogous circumstances because petitioner failed to show prejudice, partly because when "analyzing the trial transcript, [the court found it] difficult to imagine the trial judge responding favorably to [a motion for a mistrial].").

## IV.

Because Delaine has failed to show either deficient performance or prejudice, we AFFIRM the district court's order denying habeas relief.